**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| YIRIES JOSEPH ASEF SAAD MAURA, WILLIAM LÓPEZ COLÓN,  his spouse NANCY COLÓN BERRÍOS  and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, GILBERTO GONZÁLEZ VÉLEZ, JESÚS EMMANUEL MONROIG JIMÉNEZ  his spouse JAZMÍN ERIKA RODRÍGUEZ MORALES  and  the  CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, MARETZA MÉNDEZ MUÑIZ, ROLANDO RADHAMÉS GUTIÉRREZ DE JESÚS  his spouse ZULEIKA COSME RIVERA and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, SONIA YVID CONDE BURGOS, NELLY RAMONITA GONZÁLEZ RODRÍGUEZ, JAVIER BAERGA SCHROEDER, CARLOS JOSÉ SUÁREZ GUILLÉN, ANTONIO ROSA AGOSTO, MARILYN DELGADO PÉREZ, GERARDO ACOSTA FIGUEROA his spouse NEIDA INÉS HERNÁNDEZ IRIZARRY and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, JULIO VÍCTOR CASTRO LÓPEZ his spouse MADELINE TRINIDAD DÍAZ and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, LUIS ÁNGEL MARTÍNEZ OTERO his spouse DAMARIS TORRES NUÑEZ and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, GABRIEL CHÁVEZ DÍAZ his spouse NAHIR ZARAGOZA VALLE  and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, SONIA LINNETTE ROMERO RAMOS, ROBERTO PÉREZ RAMÍREZ his spouse CLARIVETTE CASTRO NARVÁEZ and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, | **CLASS ACTION COMPLAINT** <br><br> **CIVIL NO. 3:17-cv-2263** <br><br> CONSTITUTION OF THE UNITED STATES OF AMERICA FIFTH AND FOURTEENTH AMENDMENT DUE PROCESS RIGHTS, TRUTH IN LENDING ACT", REGULATION Z OF SUCH (TILA), REAL ESTATE SETTLEMENT PROCEDURES ACT, REGULATION X OF SUCH (RESPA), HOME MORTGAGE DISCLOSURE ACT, REGULATION C OF SUCH (HMDA), HOME OWNERSHIP AND EQUITY PROTECTION ACT (HOEPA), EQUAL CREDIT OPPORTUNITY ACT, REGULATION B OF SUCH (ECOA), FAIR AND ACCURATE CREDIT TRANSACTIONS (FACT), HOME OWNERS PROTECTION ACT (HOPA), GRAMM LEACH-BLILEY ACT (GLBA), AMONG OTHERS. EITHER THE DEFENDANTS OR THE FIRM HIRED FOR DEBT COLLECTION DID NOT COMPLY WITH FEDERAL LAW, TO WIT; FAIR CREDIT REPORTING ACT, REGULATION V OF SUCH, AND THE FAIR DEBT COLLECTION PRACTICES ACT (FDCPA), CONSUMER FINANCIAL PROTECTION BUREAU (CFPB), QUALIFIED WRITTEN REQUESTS (QWR's), SECURE AND FAIR ENFORCEMENT FOR MORTGAGE LICENSING ACT ("SAFE ACT"), DODD-FRANK FINANCIAL REFORM ACT (THE "DODD-FRANK ACT"), HARP, HAMP AND SUPPLEMENTAL JURISDICTION. <br><br> JURY TRIAL DEMANDED |

LIZZETTE MARÍA ALEJANDRO OCASIO, MILKA YADIRA RIVERA RIVERA, MIRIAM THERESA RIVERA TORRES, TOMÁS A VÉLEZ MARTÍNEZ his spouse GLORISA CORDERO CABRERA and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, HAYDEE RODRÍGUEZ NICHOLS, RAFAEL ANTONIO FONSECA MARRERO, LADY TRISTANY MELÉNDEZ, VIVIANA SÁNCHEZ SERRANO, SANTA ORTIZ SALINAS, JAVIER ANTONIO RIVERA DUEÑO his spouse YAMELIT MALDONADO SOTO and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, CARMEN JOSEFINA VALENTÍN DÁVILA, VIVIAN ENID FLORES MERCED, MARÍA ISABEL TORO LEVY, ESTATE OF JUAN ARSENIO VELÁZQUEZ DURÁN, LESLIE MOLINA CANCEL, SANDRA DE LOS ÁNGELES FERNÁNDEZ GARCÍA, INÉS YAMIRA RIVERA AQUINO, JOSÉ ANTONIO DÍAZ PÉREZ, PROVIDENCIA RODRÍGUEZ VEGA, LUIS EDUARDO PARDO TORO, EVELYN IVETTE PÉREZ LOURIDO, JOSÉ MANUEL RIVERA COLÓN his spouse IVETTE MARÍA PÉREZ NIEVES and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, EDWIN CASILLAS BERRÍOS his spouse MARÍA FELÍCITA ANDRADE MALDONADO and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, RAMÓN SÁNCHEZ PAGÁN, JOSÉ MANUEL LÓPEZ CRUZ his spouse MARÍA DE LOURDES BLECK ESTEVES and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, RAFAEL EDUARDO NARVÁEZ CABEZAS, VIRGEN NOEMI MARRERO CARBALLO, ENRIQUE TOLLENS ACOSTA his spouse DIANNETTE GONZÁLEZ CHARLES and the

CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, FRANCISCA CHARLES BELÉN, ANASTACIO FALCÓN ROSARIO, ESTATE OF MARISOL AMARO MEDINA, RAFAEL RODRÍGUEZ RIVERA, CATHERINE MORALES CASTRO, MICHAEL JOSEPH MORRIS ZAMORA, FERNANDO SUÁREZ GUILLÉN, JORGE CEDEÑO, LUIS EDGARDO SANTIAGO COLÓN, ADALBERTO REYES GARCED his spouse GLADYS MARIE RIVERA RODRÍGUEZ and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, ÁNGEL LUIS BERRÍOS ORTIZ his spouse GISELA RIVERA SANTIAGO and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, MARÍA MARGARITA ONDINA GORDO, WALDEMIR COLÓN LEBRÓN, MANUEL ÁNGEL VEGA BONILLA his spouse PAMELA IVETTE PÉREZ RIVERA and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, REINALDO OQUENDO VEGA his spouse MARIBEL HERNÁNDEZ PÉREZ and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, IVÁN RAFAEL SOTOMAYOR SERRA his spouse MARÍA VELILLA SOTOMAYOR and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, WANDA LEILANY ALEJANDRO RUIZ, ÁNGELA LUCÍA ROSARIO DE LEÓN, IRIS YOLANDA CARDONA TIRADO, JOSÉ ALBERTO HERNÁNDEZ TORRES, RUBÉN MIRANDA MERCADO his spouse SONIA ACEVEDO and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, ROBERTO SALICRUP HERNÁNDEZ his spouse GLORIA MARÍA RUIZ COLÓN and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, JOSÉ ALFREDO JIMÉNEZ FIGUEROA, JULIO

RONDÓN REYES his spouse GRISETH MOJICA GONZÁLEZ and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, JAIME RAFAEL VIDAL RODRÍGUEZ his spouse DINORAH SÁNCHEZ FIGUEROA and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, HARRY RODRÍGUEZ CRUZ, JUAN FERNANDO CRUZ TORRES

his spouse EVELYN MORALES SUÁREZ and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, MANUEL IVÁN CRIADO CRIADO his spouse ZAYRA DEL ROSARIO TORRES MATOS and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, JUAN MANUEL RODRÍGUEZ IRIZARRY his spouse MARÍA MILAGROS DURÁN MORALES and the CONJUGAL PARTNERSHIP CONSTITUTED BETWEEN THEM, CLARA MORETA RODRÍGUEZ, IAN DEL LLANO JIMÉNEZ his spouse KAREN BARREDA RIVERA and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, RUTH NOEMI RIVERA COLÓN, JOSÉ ANTONIO CONCEPCIÓN SOTO his spouse NÉLIDA RAMOS LÓPEZ and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, LILLIAM BETHZAIDA HERNÁNDEZ AMARO, JOSÉ ANTONIO VALDIVIA, AMETZA DELGADO CARDONA, WILLIAM PAGÁN RODRÍGUEZ his spouse EULOGIA R DEL RÍO TORRES and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, MARCELO MERCADO ORTIZ, MORAIMA RIVERA GONZÁLEZ,

CARMEN GLORIA GARCÍA RIVERA, PEDRO SEVILLA ESTELA, his spouse MARITZA RIVERA RODRÍGUEZ and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, GLORIA MARGARITA ALICEA RIVERA,

REYNALDO RODRÍGUEZ COLÓN, DENISSE DEMOYA BURGOS, LUIS FRANCISCO ORTIZ OSUNA his spouse GRORIBEL SOTO DE JESÚS and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, PABLO GUADALUPE MENDOZA his spouse ANTUANETTE RAMOS AYALA and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, LUZ ESTELA POUERIET DIAZ, EMERITO RUÍZ RODRÍGUEZ his spouse OLGA IVETTE SANABRIA VELÁZQUEZ and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, PATRICIO RODRÍGUEZ LÓPEZ his spouse EUNICE MARIBEL LUGO MEJÍAS and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, JOHNNY EDGAR MELÉNDEZ GONZÁLEZ his spouse MARÍA BELÉN DÍAZ RIVERA and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, JUAN DÍAZ PÉREZ his spouse CARMEN NÉLIDA BRAVO SOTO and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, ROLANDO ÁVILA PÉREZ his spouse ELIZABETH CHAMPAÑA GAGNERON, and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, HIRÁN ORTIZ ORTIZ, MIGUEL ÁNGEL MÁRQUEZ CAMACHO his spouse MARIBEL SANTANA SANTANA, and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, YASSER CRUZ PADILLA his spouse ALBA YANIRA TORRES CINTRÓN, and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, DONOVAN MALDONADO CRUZ, MARÍA AWILDA CRUZ ACEVEDO, YOLANDA ARROYO FONTÁNEZ, MANUEL ANTONIO TOLEDO GARCÍA his spouse BRUNILDA ROJAS GONZÁLEZ, and the CONJUGAL PARTNERSHIP CONSTITUTED

THEREIN, FERNANDO LUIS ROSARIO CARDONA his spouse RODYLOIDA RUÍZ DELGADO and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, NERISLIANG CRESPO RIVERA, ISMAEL PAGÁN CEDEÑO his spouse WANDA GONZÁLEZ RIVERA and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, JOSÉ M. CURET SALIM his spouse JUANITA ALVARADO SÁEZ and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, RICARDO JOSÉ VÁZQUEZ SERRA, YVETTE LORRAINE BONHOMME SANTOS, RICARDO RENÉ SOTO BONILLA, JORGE JOSÉ ROSA MIRANDA, MARÍA ISABEL OTERO CARABALLO, ANNIEL CARRASQUILLO AMARO, GLENDA MARIE VIERA RIVERA, ESTATE OF ÁNGEL MANUEL LLORENS ORLANDI, JUDITH MATOS NEGRÓN, ESTATE OF SOL MARGARITA CABRERA MUÑOZ, ESTATE OF VIRGILIO OSCAR RIVERA RODRÍGUEZ, DESERIE CINTRÓN CABRERA, NELSON NUÑEZ ROLÓN his spouse MAYRA ELENA ORTIZ RENTAS and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, NELSON ALVARADO HERNÁNDEZ, EDWIN GIRALD TORRES his spouse MYRNA PÉREZ MORALES and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, GINNETTE PÉREZ CAMPO, GILBERTO CRUZ PÉREZ, ÁNGEL LUIS MATOS RAMOS, ILDEFONSO MARTÍNEZ SANTIAGO, EVELYN RAMOS CORTES, LUIS EUGENIO DIOU AGRAIT, his spouse MARÍA DE LOS ÁNGELES COLÓN MOREL and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, GILBERT ARROYO LOPERENA his spouse LEIDA MÉNDEZ PAGÁN and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, ESTATE OF EDWIN PÉREZ

AYALA, MARGARITA RIVERA RIVERA, EDA PÉREZ CABRERA, EDWIN GLASS MARTÍNEZ his spouse CARMEN RIVERA VILLEDA and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, JOHN MACEIRA LÓPEZ, MARCOS E RODRÍGUEZ GÓMEZ his spouse NANCY MELÉNDEZ VALENTÍN and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, EDWIN MARTÍNEZ RIVERA, JOAQUÍN JOSÉ JARQUE RODRÍGUEZ, ÁNGEL LOUIS CARMONA BENET his spouse MARÍA DE LOS ÁNGELES HERNÁNDEZ DÍAZ and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, FÉLIX JOSÉ RIVERA PÉREZ, CARMEN GLORIA GÓMEZ NUÑEZ, JOHANN ENID MARTÍNEZ ORTIZ, EDWIN MARRERO TORRES, ARÍSTIDES LÓPEZ RAMOS his spouse MARÍA MERCEDES REYES CONCEPCIÓN and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, ANA LUISA BERRÍOS DOBLE, SARA VICTORIA COLÓN VEGA, IVÁN DAVID COLÓN VEGA, ESTATE OF JULIO ENRIQUE COLÓN, ÁNGEL LUIS DÁVILA REYES, NESTOR CRUZ DÍAZ his spouse ADELIZ FERRER DECAMPS and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, FRIDA MARCHOSKY KOGAN, JUAN ERNESTO DEL ROSARIO MASINI his spouse IVEA MARÍA SELLES HERNÁNDEZ and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, JOSÉ GERALDO ROMÁN GONZÁLEZ his spouse EVELYN SERRANO AGUEDA and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, HÉCTOR LUIS RIVERA RODRÍGUEZ his spouse OLGA ENETTE RIVERA CRESPI and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, EUGENIO JOEL RAMOS

CALDERÓN his spouse ERIKA ENCARNACIÓN SÁNCHEZ and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, RAMÓN LUIS SOTO MORALES his spouse ELSIE SUSAN SANCHEZ GONZALEZ and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, EDWIN FRANCISCO RODRÍGUEZ his spouse LOURDES HERNÁNDEZ LLANES and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, FRANCISCA CRUZ DELGADO, ÁNGEL LUIS RODRÍGUEZ CAMACHO his spouse SANDRA IVETTE ROMÁN DÍAZ and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, CARLOS ALBERTO ÁLVAREZ RIVERA his spouse WILMA GÁNDARA GORRITZ and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, PEDRO RAFAEL HERNÁNDEZ SÁNCHEZ his spouse ZORAIDA SANTOS PAGÁN and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, ESTHER ROSA LÓPEZ MEDINA, AGUSTÍN ALEJANDRO CRUZ his spouse EILEEN DALMARY JIMÉNEZ GAVILLÁN and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, JOSÉ ANTONIO LAPORTE ESPADA, ROBERTO OCANA SERRANO, ALEJANDRO ESTRADA MAISONET his spouse DIANNE QUILES LUGO and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, YOLANDA QUILES SERRANO, CECILIO ALLENDE QUIÑONES his spouse WANDA I VILLAFAÑE MATOS and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, JESÚS MANUEL MALDONADO PÉREZ his spouse OLGA I. GONZÁLEZ DÍAZ and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, DEOGRACIA TAPIA FEBRES his spouse CARMEN BENÍTEZ GARAY

and the CONJUGAL PARTNERSHIP
CONSTITUTED THEREIN, JOSE
ANTONIO GONZÁLEZ ARCE his spouse
EVELYN CRUZ FLORES and the
CONJUGAL PARTNERSHIP
CONSTITUTED THEREIN, HILDA DEL
ROSARIO FIGUEROA SANTIAGO,
RUZAIDI VILLAFANE ESQUILIN,
EFRAÍN LLANES COLÓN his spouse
XIOMARA ZABALA GARCÍA and the
CONJUGAL PARTNERSHIP
CONSTITUTED THEREIN, ERVÍN
RODRÍGUEZ LABOY his spouse GLORIA
BERMÚDEZ VARGAS and the
CONJUGAL PARTNERSHIP
CONSTITUTED THEREIN, LUIS
ENRIQUE RAMOS PITRE his spouse
GRISELDA CRESPO ARVELO and the
CONJUGAL PARTNERSHIP
CONSTITUTED THEREIN, MIGUEL
ÁNGEL RÍOS SANTIAGO, JAIME
MACHADO ROMÁN, CARLOS LUIS
AMADOR FERNÁNDEZ, MIRIAM
CARRIÓN SOTO, ESTATE OF
WALBERTO NUSSA GONZÁLEZ,
MARIBEL TORRES ENCARNACIÓN,
JOSÉ RAMÓN CINTRÓN MERCADO,
BRUNILDA SANTIAGO RIVERA,
ESTATE OF CONCEPCIÓN GONZÁLEZ
RIVERA, GLENDALYS GONZÁLEZ
SANTIAGO, LESTER I. GONZÁLEZ
SANTIAGO, JOSÉ ARNALDO
GONZÁLEZ SANTIAGO, ALEXY SOTO
ROSARIO his spouse IVELISSE
VEGUILLA COLÓN and the CONJUGAL
PARTNERSHIP CONSTITUTED
THEREIN, PEDRO JAVIER RODRÍGUEZ
QUILES his spouse WALESKA DEL
CARMEN MALDONADO RODRÍGUEZ
and the CONJUGAL PARTNERSHIP
CONSTITUTED THEREIN, DAVID
ALVÁREZ LOPEZ his spouse GLENNY
DÍAZ DOMINGUEZ and the CONJUGAL
PARTNERSHIP CONSTITUTED
THEREIN, ERIC SANTIAGO HALAIS
BORGES, MURIEL RIVERA MUÑOZ,

IVONNE BERNARD RIVERA, GRACIANO VÉLEZ ALBALADEJO his spouse ANA YAMILE SERRANO CASTRO, and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, WILLIAM RODRÍGUEZ OJEDA his spouse MARÍA FELICIANO MÉNDEZ, and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, JOSÉ A. VARGAS ARRATÍBEL his spouse GLORIA A. RODRÍGUEZ TRUJILLO, and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, MARÍA CELIA LEBRÓN QUINTANA, ANTONIO MUÑOZ SUÁREZ, HIRAM PEÑA ROLDÁN his spouse OLGA PAGÁN MALDONADO, and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, MIGUEL ANTONIO CHEVERE DONES, his spouse LUZ NEREIDA STUART DIAZ and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, MIRIAM JANETTE MERCADO ACOSTA, MIGUEL ANGEL MEDINA LOPEZ, his spouse IVA YADIRA DE JESUS GARCIA, and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, LUIS MANUEL FERNANDEZ VELAZQUEZ, ANA L TOLEDO DAVILA, JULIO ENRIQUE RIVERA NEGRON, his spouse ELIZABETH MONTALVO MELENDEZ and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, SAMUEL LUCIANO PEREZ, his spouse MARIA LUISA CRUZ RIVERA and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, NATHAN CABAN GARCIA, his spouse MARIA MAGDALENA REYES PAGAN and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, TANIA LIZ RODRIGUEZ GARCIA, MARILYN FONSECA COTTO, JOSE NOEL RODRIGUEZ ALVAREZ, MIGDALIA

MARGARITA DE LEON VELEZ, MARIO JOSE RIVERA COTTO his spouse LILLYBELL OLIVO RIVERA and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, PAULA E ESTRADA DIAZ, BENITA ORTIZ CEBALLOS, ORLANDO DIAZ SOTO, his spouse MERCEDES LLERA CATALA and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, GLORIA MARÍA TAPIA DE JESÚS, LUIS ALEXIS MANSO ROSARIO his spouse YANIRA SANTIAGO RIVERA and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, ELBA MIGDALIA ALICEA ORTIZ, MARCOS GONZALEZ RODRIGUEZ, RAMON RAFAEL GONZALEZ PEREZ his spouse NORMA HAIDE MARTINEZ RODRIGUEZ and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, JOSE GILBERTO MALDONADO MALAVE his spouse ZULMA IVETTE RECIO LOPEZ and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, MARLEEN RIVERA MULERO, JUAN ALEXANDER SOTO AYBAR his spouse MIGDALIA DIAZ PEREZ and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, MANUEL FELIPE EGIPCIACO RUIZ his spouse BETZAIDA IRIS PORRATA TIRADO and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, NILDA IRIS EUTSLER DELGADO, CARLOS JOSE SARNELLI, EZEQUIEL ANTONIO GONZALEZ CARRION his spouse MADELINE RIVERA PAGAN and the CONJUGAL PARTNERSHIP CONSTITUTED THEREIN, ABC PLAINTIFFS, UNKNOWN PLAINTIFFS, ON BEHALF OF THEMSELVES AND ALL OTHERS IN SIMILAR SITUATION.
PLAINTIFFS,

VS

SCOTIABANK PUERTO RICO, MIDFIRST BANK, PR ASSET PORFOLIO 2013-1 INTERNATIONAL LLC, MWPR CR LLC, COOP DE AHORRO Y CREDITO DE CIALES, ROOSEVELT REO PR IV CORP., RUSHMORE LOAN MANAGEMENT, WM CAPITAL PARTNERS 53 LLC, WMPRRE LLC, BANCO COOPERATIVO DE PUERTO RICO, AUTORIDAD PARA EL FINANCIAMIENTO DE LA VIVIENDA DE PUERTO RICO, ROOSEVELT REO PR CORP., CITIMORTGAGE INC., ROOSEVELT REO, TAX-FREE PR TARGET MATURITY FUND, INC; PR MORTGAGE-BACKED, ROOSEVELT CAYMAN ASSET COMPANY, BANK OF AMERICA N.A., UNITED STATES DEPARTMENT OF AGRICULTURE RURAL DEVELOPMENT A/C/C LA ADMINISTRACION DE HOGARES DE AGRICULTORES, BAYVIEW LOAN SERVICING LLC, FEDERAL NATIONAL MORTGAGE ASSOCIATION T/C/C FANNIE MAE, JAMES B. NUTTER & CO., LAKEVIEW LOAN SERVICING LLC, ROOSEVELT CAYMAN ASSET COMPANY II, LEHMAN RE LIMITED, A BERMUDA CORPORATION, SANTANDER FINANCIAL SERVICES, DLJ MORTGAGE CAPITAL, U.S. BANK NATIONAL ASSOCIATION, LIME PROPERTIES RESDENCIAL LTD, FIRST BANK, UNITED STATES OF AMERICA (FARM SERVICE AGENCY), UNITED STATES OF AMERICA (FARM SERVICE AGENCY), UNITED STATES DEPARTMENT OF AGRICULTURE RURAL DEVELOPMENT, FEDERAL HOME LOAN MORTGAGE CORPORATION (FREDDIE MAC), FEDERAL MORTGAGE ASSOCIATION (FANNIE MAE), WELLS FARGO &

COMPANY, JAMES B. NUTTER &
COMPANY, LIME RESIDENTIAL LTD,
RNPM LLC, TRM LLC, LIHMAN RE
LIMITED      A      BERMUDA
CORPORATION, COOPERATIVA DE
AHORRO Y CREDITO LAS PIEDRAS,
BANCO POPULAR OF PUERTO RICO,
BANCO SANTANDER PUERTO RICO,
ISLAND FINANCE CORPORATION,
SUNWEST MORTGATE COMPANY
INC. ORIENTAL BANK PUERTO RICO,
OPERATING PARTNERS LLC, XYZ
INSURANCE COMPANY, UNKOWN
DEFENDANTS,

DEFENDANTS.

## THIRD AMENDED CLASS ACTION COMPLAINT

**COME NOW THE PLAINTIFFS, through** the undersigned attorneys, and very respectfully **STATE, ALLEGE** and **PRAY** as follows:

## I.      JURISDICTION AND VENUE

1.      This Honorable Court has jurisdiction over the instant case pursuant to 28 U.S.C. §1331, as this case arises under federal law.

2.      This Honorable Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because there are at least 100 Class Members in the proposed Class, the combined claims of proposed Class Members exceed $5,000,000 exclusive of interest and costs, and at least one Class Member is a citizen of a state other than Defendants' state of citizenship.

3.      Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims asserted herein occurred in this district, and Plaintiffs dealt with Defendants, which are located in and/or do business in this district and/or had sufficient contacts

with the laws and markets of Puerto Rico through the marketing, promotion and sale of mortgages and related services, as to render exercise of jurisdiction by this Honorable court permissible. Venue is proper pursuant to 28 U.S.C. § 1391(c) because Defendants conduct substantial business in this District, have sufficient minimum contacts with this District, and otherwise purposely avails themselves of the markets in this District, through the promotion, sale, and marketing of their services in this District.

4.      The appearing Plaintiffs also seek supplemental jurisdiction on The Constitution of the Commonwealth of Puerto Rico and on state law claims under Law No. 169 of August 9, 2016 and Law No. 184 of August 17, 2012, and Articles 1802 and 1803 of the Commonwealth of Puerto Rico Civil Code, Puerto Rico Laws Annotated, Title 31, Sections 5141 and 5142.

## II.      PARTIES

1.      The appearing Plaintiffs are all persons in the United States of America or with real state property in the United States of America who have continued to be kicked out of their homes based on false documents and who have been told to stop making their mortgage payments and thus, having their financial situation affected by Defendants' actions. They have allegations of misconduct in illegal, unlawful, wrongful and negligent origination and qualification, loan process and closing, predatory lending, robo-signing, faulty paperwork, dual tracking, illegal mortgage servicing, illegal foreclosure, among other misconduct. Also, all persons in the United States of America or with real state property in the United States of America whose loans have been serviced by Defendants and all related actions, who have complied with their obligation under a trial loan modification program and have not received a permanent modification pursuant to the loan modification agreement, who have been subjected to Loss Mitigation process at the same time that

a foreclosure claim is been filed against them and/or have been subject to an illegal foreclosure and harmed thereby.

2.      The appearing Plaintiffs bring this class action on behalf of themselves and all others in similar situation ("Class Members"). **Plaintiffs have alleged and affirmed the Defendants noncompliance and violations of The Constitution of the United States of America Fifth and Fourteenth Amendment Due process rights and of the Commonwealth of Puerto Rico, "Truth in Lending Act", Regulation Z of such (TILA), Real Estate Settlement Procedures Act, Regulation X of such (RESPA), Home Mortgage Disclosure Act, Regulation C of such (HMDA), Home Ownership and Equity Protection Act (HOEPA), Equal Credit Opportunity Act, Regulation B of such (ECOA), Fair and Accurate Credit Transactions (FACT), Home Owners Protection Act (HOPA), Gramm Leach-Bliley Act (GLBA), among others. Either the Plaintiff or the firm hired for debt collection did not comply with federal law, to wit; Fair Credit Reporting Act, Regulation V of such, and the Fair Debt Collection Practices Act (FDCPA). Consumer Financial Protection Bureau (CFPB), Dodd-Frank Financial Reform Act (the "Dodd-Frank Act").  Thus, federal questions lie at the heart of this action.**

3.      The appearing Plaintiffs bring this class action on behalf of themselves and a class of persons ("Class Members") who sought loan modifications to their mortgage payments through their banks and/or mortgage loan servicers, herein included as Defendants. The appearing Plaintiffs have experienced lengthy delays when waiting for the servicer to make a decision on whether or not to grant a loan modification. In some cases, the servicer doesn't tell the homeowners that they are missing documents necessary for the loan modification decision. In others, the servicer simply doesn't get around to reviewing the request in a timely manner.

4.     At the time Plaintiffs are residents of the Commonwealth of Puerto Rico and/or the United States of America, with real estate properties located in the Commonwealth of Puerto Rico (hereinafter "Puerto Rico").

5.     Unknown Plaintiff is any person with a real estate property located in Puerto Rico or USA and guaranteed by a mortgage loan serviced by the Defendants and that can be subject of the allegations contained in the present claim.

6.     ABC Plaintiff is any person with a real estate property located in Puerto Rico or USA and guaranteed by a mortgage loan serviced by the Defendants and that can be subject of the allegations contained in the present claim.

7.     The named Defendants in the instant Complaint are banks and/or mortgage loan servicers dedicated to provide mortgage loans to qualified or unqualified individuals, Mortgagee. The mortgagee is the lender. The mortgagee gives the loan to the mortgagor. Mortgage Investor. An investor buys loans from lenders. By purchasing mortgage loans from lenders, the mortgage investor provides the lender with funds to use to make additional loans. Mortgage servicer. Mortgage servicers manage loan accounts on behalf of the mortgagee or investor; with offices, branches and subsidiaries located in Puerto Rico and/or the United States of America (hereinafter "the United States").

8.     Unknown Defendants: Because the true names and capacities, whether individual, corporate, associate or otherwise, of unknown Defendants to Plaintiffs at this time, there are included as such in the instant Complaint. On information and belief, unknown Defendants are responsible to Plaintiffs for the actions, acts, omission, misconduct, misrepresentation and negligence herein alleged. Plaintiffs will amend this Class Action Complaint when the named of said unknown Defendants have been ascertained.

9.      Unknown XYZ INSURANCE COMPANYs are responsible to Plaintiffs for the actions, acts, omission, misconduct, misrepresentation and negligence herein alleged. Plaintiffs will amend this Class Action Complaint when the named of said unknown XYZ INSURANCE COMPANYs have been ascertained.

10.     Plaintiffs are informed, believe and thereon allege that each and all of the aforementioned Defendants are responsible, either by act or omission, strict liability, fraud, deceit, fraudulent concealment, negligence, respondent superior, breach of contract or otherwise, for the occurrences herein alleged and that Plaintiffs injuries and causes of action, as herein alleged, were proximately cause by the conduct of Defendants.

11.     Plaintiffs are informed, believe and thereon alleged that each and all of the aforementioned Defendants at all material time relevant to this Complaint, performed the acts alleged herein and/or otherwise conducted business in this district. Defendants, and each of them, are corporations or other business entities, form unknown, have and are doing business in this district.

12.     Plaintiffs reserve the right to amend or modify the class action complaint to include additional plaintiff or defendants as they have been ascertained.

### III.      BACKGROUND TO THE RESIDENTIAL MORTGAGE CRISIS

1.      Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

2.      Toward the end of 2007 and throughout 2008, the residential real estate market in the United States of America collapsed, causing a tailspin that drove the economy into recession.

3.       In response to the foreclosure crisis, the Government of the United States of America introduced the Financial Stability Plan on February 10, 2009, to help prevent foreclosures and restructure troubled mortgage loans.

4.      As part of the plan, the U.S. Treasury introduced the Home Affordable Modification Program, which provided guidelines for mortgage servicers to adopt to modify loans for homeowners in financial need, including the following:

• Servicers will receive an up-front Servicer Incentive Payment of $1,000 for each eligible modification meeting guidelines established.

• Any foreclosure action will be temporarily suspended during the trial period, or while borrowers are considered for alternative foreclosure prevention options.

• ***The trial modification period will last 90 days*** (three payments at modified terms) or longer if necessary to comply with investor contractual obligations. The borrower must be current at the end of the trial period to obtain a Home Affordable Modification.

• The servicer must inform borrowers of the availability and advantages of counseling and provide a list of local HUD-approved counselors and that counseling is a requirement of the modification terms.

• There are no modification fees or charges borne by the borrower.

• ***Unpaid late fees will be waived for the borrower.*** These include late fees prior to the start of the trial period and accrued during the period.

• Compensation is provided to the servicer that performs the loss mitigation or modification activities. Upon modification following successful completion of the trial period, and contingent on signing the program servicer agreement, the servicer will receive an incentive fee of $1,000 for each eligible modification meeting HAMP.

• For loans modified while still current, the servicer will receive a Current Borrower One-Time Incentive of $500 following successful completion of the trial period.

• When promoting or describing loan modifications, *servicers should provide borrowers with information designed to help them understand the modification terms that are being offered and the modification process. Servicers also must provide borrowers with clear and understandable written information about the material terms, costs, and risks of the modified mortgage loan in a timely manner to enable borrowers to make informed decisions*.

• *Servicers should have procedures and systems in place to be able to respond to inquiries and complaints relating to loan modifications. Servicers should ensure that such inquiries and complaints are provided fair consideration, and timely and appropriate responses and resolution*.

• Servicers will be required to maintain records of key data points for verification/compliance reviews.

• Servicers will be required to collect and transmit borrower and property data in order to ensure compliance with the program as well as to measure its effectiveness. (Emphasis added.)

5.     As in the United States, the People of Puerto Rico have been greatly affected by the economic crisis that both the Island and the United States have been undergoing during the last years.

6.     The scarcity of economic resources in Puerto Rico has caused many homeowners to lose their homes to foreclosure initiated by the banking or financial institutions holding their property's mortgages.

7.      Puerto Rico's economic crisis has greatly affected our citizenry, who have been deprived of their right to own a home.

8.      Most mortgage loans include acceleration clauses and other processes that protect any unpaid balance owed to the mortgagee.

9.      The citizenry in general is not well aware of the technicalities and complex processes entailed by the legal obligations incurred under a mortgage loan; therefore, it requires further orientation with regard to such processes.

10.      In light of the foregoing, the Administration of President Barack Obama created the Making Home Affordable Program (MHAP) to help mortgagors to refinance or modify their loans through two (2) programs:

> (A)   Home Affordable Refinance Program (HARP):
> Provides refinancing at lower interest rates to homeowners whose loans are guaranteed by Fannie Mae or Freddie Mac, including those who owe more than what their home is actually worth.

> (B)   Home Affordable Modification Program (HAMP):
> Provides mortgagors with incentives to modify their loans by reducing their loan's interest rate, extending their loan's term, or lowering their mortgage payments up to 35% of their gross income.

11.      The United States Congress enacted legislation in order to require mortgagors of loans with Federal guarantees to submit to a mandatory mediation process, before the mortgagee initiates a foreclosure proceeding.

12.      Just as the Federal Government, the Commonwealth Government sought alternatives to reduce the number of foreclosure proceedings and prevent, to the extent possible, our citizens from losing their properties.

13.      In Puerto Rico, pursuant to Law No. 184 of 2012, a foreclosure mandatory

mediation process to be held in the courts of justice or the appropriate administrative forums before a foreclosure proceeding against a principal residential property in the Commonwealth of Puerto Rico is initiated by any banking institution and/or loan mortgage servicer.

14.     As per the Constitution of the Commonwealth of Puerto Rico state:

Article 6 - General

Provisions Section 14

Section 14. Land tenure by corporations.

No corporation will be authorized to conduct real estate purchase and sale business; nor shall he be allowed to possess or have such a class of assets except for those that were rationally necessary in order to carry out the purposes to which his creation obeyed; and the ownership and management of lands of any corporation authorized to engage in agriculture shall be limited, by its charter, to an amount not exceeding five hundred acres; and this provision shall be understood as preventing any member of an agricultural corporation having an interest of any kind in another corporation of the same nature.

However, corporations may make loans with real estate guarantees and acquire them when necessary for the collection of loans; but they must have said real estate thus obtained within five years of having received the property title of the same.

Corporations that have not organized in Puerto Rico, but do business in Puerto Rico, will be obligated to comply with the provisions of this section, to the extent applicable.

## IV.     NATURE OF THE ACTION

### A.  MATERIAL FACTS COMMON TO ALL CAUSES OF ACTION

1.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

2.     The Defendants stands in for the beneficial owner of a mortgage loan in virtually dealing with homeowners. It is the defendants to whom the homeowners mail their monthly payments and

the servicer to whom the homeowner in distress must address for a loan modification and/or postponement of a foreclosure sale.

3.     The Defendants have a strong incentive to pursue foreclosures since defendants' main source of income is a monthly servicing fee based on a percentage of the outstanding principal balance of a loan. Therefore, they generate more income from foreclosures than by modifying a loan.

4.     Late fees and other "default managing fees", such as property inspections, are a large source of income for defendants, as they retain these fees when they are paid by delinquent homeowners. The profitability of this fess can be significant and if the homeowner does not pay them, they can be recovered from the proceeds of foreclosure sales, as well as insurance, property inspections, appraisals, title searches and legal services.

5.     Dual tracking occurs when banks and servicers process both a foreclosure and a loan modification application for the same borrower at the same time. Short-term repayment plans, such as trial modifications, are very attractive to banks and servicers. The incentives previously discussed encourage bankers and servicers to incur in unlawful dual tracking practices, as their primary goal is foreclosure and not permanent loan modifications.

6.     Defendants process foreclosures and loan modifications through different departments and the communication between them are ineffective. Plaintiffs are lure to sleep since they are assured that they will be receiving a loan modification by one department while facing a foreclosure proceeding. Therefore, foreclosure usually occur while homeowners are in a loss mitigation program negotiating a loan modification, and sometimes, even after they have been approved for a loan modification. These have resulted in unnecessary and illegal foreclosures, practice known as dual-tracking.

7.      Also, defendants imposed improper late fees on a struggling homeowner who are trying to get a loan modification making foreclosures more likely by increasing the total amount owed to the lender and therefore, increasing the monthly payment amounts in a potential loan modification.

8.      The appearing Plaintiffs have experienced lengthy delays when waiting for the servicer to make a decision on whether or not to grant a loan modification. In some cases, the servicer doesn't tell the homeowners that they are missing documents necessary for the loan modification decision. In others, the servicer simply doesn't get around to reviewing the request in a timely manner.

9.      Plaintiffs reserve the right to amend or modify the class action complaint to include additional material facts as they have been ascertained.

### B.  CLASS ACTION ALLEGATIONS

1.      Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

2.      Plaintiffs bring this class action on behalf of themselves and a class of persons ("Class Members") who have been subject to illegal foreclosures and/or sought modifications to their mortgage payments through their mortgage servicers, and/or Defendants.

3.      Plaintiffs contacted Defendants to reduce the loan payments on theirs loans due to various personal situations, to wit: health problems, spouse and/or relative's health problems, reduction in hours at their jobs and/or loss of their job, among other justified reasons. The Defendants and/or their mortgage servicers represented they would help by submitting Plaintiffs to their loss mitigation process, putting Plaintiffs in a trial mortgage modification program that would become permanent if Plaintiffs made reduced payments during the three-month trial period and/or simply negating Plaintiffs of their right to be qualified for a loan modification under HARP and HAMP programs.

4.      Despite Plaintiffs' efforts in Defendants' loan mitigation programs and complying with Defendant's requests for various documentation, Plaintiffs found themselves hounded by Defendants a few months later for a delinquency, their credit-worthiness ruined, and rejected for permanent loan modification.

5.      In order for Plaintiffs to qualified for Defendant's loan mitigation programs, Plaintiffs were required by Defendants to be behind three (3) months in their mortgage payments and thus, having their credit affected by Defendants' requirements.

6.      Defendants, in clear violation of applicable laws and regulations refuse to accept Plaintiffs partial payments to the mortgage loans.

7.      Plaintiffs' story is typical. Defendants did not live up to its promises of providing borrowers with reduced loan payments and/or simply submit Plaintiffs to a lengthy Loss Mitigation Process with no result and at the same time filing a foreclosure claim against them. This constitutes dual tracking and is prohibited by law. Moreover, Plaintiffs emerged from the trial modification in worse shape than they entered it, despite doing everything the Defendants requested of them.

8.      As previously stated, when Plaintiffs began having trouble making their regular loan payments, they contacted the Defendants to find out if they were eligible to enter the widely-advertised modification programs. The main lure of the HAMP and other Defendants hardship assistance plans to consumers is the stay of foreclosure proceedings and the promise of smaller loan payments.

9.      Plaintiffs were misinformed by the Defendants that they couldn't get a loan modification unless they were behind ("late") in their payments.

10.     Defendants required Plaintiffs to submit and then resubmit information and documentation when applying for a loan modification. This documentation was routinely lost and/or misplace by Defendants.

11.     Pursuant to their agreement with Defendants, Plaintiffs and Class Members fulfilled their obligations by submitting the requested paperwork and timely making the modified payments during the trial period, when applicable.

12.     Plaintiffs that were rejected from permanent modification plans through no fault of their own should not found themselves in no worse position than they entered it. Instead, Defendant's failure to honor its agreements and its misrepresentations and omissions about a program enacted to help homeowners reduce their payments and keep their homes have left Plaintiffs and Class Members financially and emotionally devastated.

13.     Plaintiffs were misled by Defendants for (1) they were told that they needed to stop mortgage payments to be behind on their payments to qualify for a loan modification; (2) Defendants refused to accept their partial payments; (3) that a modification would resolve the foreclosure; (4) they not received the proper notification (5) that they did not need to appear at Court in the foreclosure proceedings and (6) they were eventually denied the loan modification only to find out that the Court granted default judgment in favor of the Bank in the foreclosure proceedings.  Defendants lured Plaintiffs to sleep until a default judgment was rendered against Plaintiffs because of the misleading and misrepresentations of the Defendants.

14.     Defendants lured Plaintiffs to sleep until a default judgment was rendered against Plaintiffs because of the misleading and misrepresentations of the Defendants.

15.     Defendants' failure to discharge their required loan modification obligations, and related unfair and deceptive practices, include, but are not limited to, the following: (a) failing to establish

adequate processes for loan modifications; (b) allowing the Plaintiffs to stay in trial modifications for excessive time periods; (c) wrongfully denying modification applications; (d) providing false or misleading information to Plaintiffs while referring their loan to foreclosure during the loan modification application process; (e) providing false or misleading information to Plaintiffs while initiating foreclosures where the Plaintiffs were in good faith actively pursuing a loss mitigation alternative offered by the Defendants; (f) misrepresenting to the Plaintiffs that loss mitigation programs would provide relief from the initiation of foreclosure or further foreclosure efforts; (g) failing to provide accurate and timely information to Plaintiffs who are in need of, and eligible for, loss mitigation services, including loan modifications; (h) misrepresenting to the Plaintiffs to stop making their mortgage payments; (i) falsely advising Plaintiffs that they must be at least 90 days delinquent in loan payments to qualify for a loan modification; (j) the Defendants failed to act on the Plaintiffs' loan modification in a timely manner; (k) failing to properly process Plaintiffs' applications for loan modifications, including failing to account for documents submitted by them; (l) denying acceptance of partial payments; (m) failing to respond to Plaintiffs' reasonable requests for information and assistance; (n) failing to comply with their duty to respond to Plaintiff's qualified written requests (QWR's) that Plaintiffs submitted and (o) misrepresenting to the Plaintiffs that loss mitigation programs would not provide relief including a reduction in the principal amount of the loan to fair market value.

16.    The Defendants in this case, are prohibited from engaging in unfair or deceptive practices with respect to consumers. Federal laws and programs, among the *Home Affordable Modification Program* (hereinafter "*HAMP*"), establish requirements to be followed in the foreclosure of single family residential mortgage, like the one in controversy. Said requirements were not followed by the appearing Defendants.

17.     Plaintiffs continue to be kicked out of their homes based on false documents. They have allegations of misconduct in illegal, unlawful, wrongful and negligent origination and qualification, predatory lending, robo-signing, faulty paperwork, dual-tracking and illegal mortgage servicing didn't end the misconduct.

18.     The Defendants failed to provide a Truth in Lending disclosure as required by Section 1026.17, General disclosure requirements.  The bank's failure to provide the required disclosure resulted in 23 violations of TILA due to 23 items that must be disclosed as required by aforementioned section and this constitute material violations of TILA.  The material disclosures are those defined in section 1026.23(a)(3)h which includes the APR, the finance charge, the amount financed, the total of payments, the payment schedule, and the disclosures and limitations referred to in section 1026.32(c) and (d) and 1026.43(g).   The bank's failure to provide material disclosure triggers the consumer's rights.

19.     Defendants failed to comply with their duty to respond to Plaintiff's qualified written requests (QWR's) which Plaintiffs filed.

20.     Plaintiffs reserve the right to amend or modify the class action complaint to include additional allegations as they have been ascertained.

## C.   CLASS ALLEGATIONS AND REQUEST FOR CLASS CERTIFICATION

1.     Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

2.     Plaintiffs bring this action on behalf of themselves and all others similarly situated as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

3.     Plaintiffs seek certification of the following Class:

> All persons in the United States of America or with real state property in the United States of America who have continued to be kicked out of their homes based on false documents and who have been told to stop making

their mortgage payments and thus, having their financial situation affected by Defendants' actions. They have allegations of misconduct in illegal, unlawful, wrongful and negligent origination and qualification, loan process and closing, predatory lending, robo-signing, faulty paperwork, dual tracking, illegal mortgage servicing, illegal foreclosure, among other misconduct. Also, all persons in the United States of America or with real state property in the United States of America whose loans have been serviced by Defendants and all related actions, who have complied with their obligation under a trial loan modification program and have not received a permanent modification pursuant to the loan modification agreement, who have been subjected to Loss Mitigation process at the same time that a foreclosure claim is been filed against them and/or have been subject to an illegal foreclosure and harmed thereby.

4.      Plaintiffs reserve the right to amend or modify the class or to create a subclass limited to particular issues.

5.      Plaintiffs and the members of the Class are so numerous that joinder of all members individually, in one action or otherwise, is impractical.

6.      The instant action involves questions of law and fact common to Plaintiffs and all members of the Class, including, without limitation:

(a)      Whether Defendants breached its contracts and promises with Plaintiffs and the Class Members and their obligations under the HAMP, HARP and other loan modification programs;

(b)      Whether Defendants breached the implied covenant of good faith and fair dealing; (permanent modifications to Class Members);

(c)      Whether Defendants improperly recorded an/or caused to be recorded Notices of Default, Notices of Sale, and/or Deed Upon Sale;

(d)      Whether Defendants illegally charged homeowners late fees;

(e)      Whether Defendants' conduct was willful or reckless;

(f)     Whether Defendants violated Puerto Rico's Principal Residence Protection and Mandatory Mediation in Foreclosure Proceedings Act; Law 184;

(g)     Whether Defendants engaged in practices that warrant equitable, injunctive, and monetary relief; and,

(h)     Whether Plaintiffs and Class Members sustained damages resulting from Defendants' conduct and, if so, the proper measure of damages, restitution, equitable or other relief, and the amount and nature of such relief.

(i)     Whether Defendants violated Constitution of the United States of America, Fifth and Fourteenth Amendment Due Process Rights, Truth In Lending Act", Regulation Z of such (TILA), Real Estate Settlement Procedures Act, Regulation X of such (RESPA), Home Mortgage Disclosure Act, Regulation C of such (HMDA), Home Ownership And Equity Protection Act (HOEPA), Equal Credit Opportunity Act, Regulation B of such (ECOA), Fair And Accurate Credit Transactions (FACT), Home Owners Protection Act (HOPA), Gramm Leach-Bliley Act (GLBA), among others, either the Defendants or the firm hired for Debt Collection did not comply with federal law, to wit: Fair Credit Reporting Act, Regulation V of such, and the Fair Debt Collection Practices Act (FDCPA), Consumer Financial Protection Bureau (CFPB), Qualified Written Requests (QWR's), Secure And Fair Enforcement For Mortgage Licensing Act ("SAFE ACT"), DODD-FRANK Financial Reform Act (THE "DODD-FRANK ACT"), HARP, HAMP.

7.      Plaintiffs' claims are typical of the claims of the members or each of the class they seek to represent. Plaintiffs and all members of the Class sustained injuries and damages arising of Defendants' common course of conduct in violation of law as complained of herein. The injuries and damages of each member of the Class were caused directly by Defendants' wrongful conduct in violation of law as alleged herein.

8.      Plaintiffs understand and are willing to undertake the responsibilities of acting in a representative capacity on behalf of the proposed Class. Plaintiffs will fairly and adequately protect the interests of the Class and have no interests adverse to or that directly conflict with the interests of the other members of the Class.

9.      This action is brought under Rule 23 because Defendant has acted on grounds generally applicable to all members of the Class.

10.     Judicial determination of the common legal and factual issues essential to this case would be far more efficient and economical as a class action than piecemeal individual determinations. Individualized litigation would also present potential for inconsistent contradictory judgments.

11.     Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

12.     Plaintiffs reserve the right to amend or modify the class action complaint to include additional class allegations or to create a subclass limited to particular issues as they have been ascertained.

## V.      CAUSES OF ACTION

### A. Allegation on Breach of Contract, Dual Tracking and Constitution of the United States of America Fifth and Fourteenth Amendment Due process rights.

1.      Plaintiffs incorporate the above allegations by reference as though fully set forth herein.

2.      Plaintiffs held a mortgage serviced through Defendants.

3.      Plaintiffs sought to modify their monthly payments based on Defendant's participation in the HAMP or another loan modification program. Plaintiffs provided all the necessary documentation requested by Defendant in a timely manner in order to participate in a modification program.

4.      Defendant informed Plaintiffs that they could begin the trial modification period and make modified interest payments immediately, without disclosing the possibility of negative consequences to their mortgage payment history, and under the expectation that they would receive a permanent modification under the HAMP or other loan modification program thereafter and/or submitted Plaintiffs to a Loss Mitigation Program to later denied them a loan Modification.

5.      While Plaintiffs were in the Loss Mitigation Program Defendants filed foreclosure complaints against them, this constitutes Dual Tracking and it's prohibited by law.

6.      Defendants denied Plaintiffs of their right to be qualified for a Loss Mitigation program.

7.      Plaintiffs agreed to Defendant's offer and made the modified payments based on Defendant's representations about the trial modification agreements, keeping all information and representations true and accurate in all material respects, and by taking all such other steps necessary, or are excused from performance because of Defendant's non-performance as alleged herein.

8.      Defendants accepted Plaintiffs' modified offer of reduced payments throughout the trial period.

9.      Plaintiffs' modified payments during the trial period constitute consideration and by making those payments Plaintiffs gave up their ability to pursue other alternatives to prevent default of their mortgage payments and foreclosures.

10.    Plaintiffs and Defendants therefore formed a valid contract concerning the modification of their mortgage payments.

11.    Defendant did not perform in accordance with the contract terms regarding the trial modification period, and in fact, Defendants intentionally and systematically delayed converting the trial modifications into permanent modifications and instead demanded additional documentation already sent and failed to implement as required under the loan modification programs adequate procedures and systems to respond to customer's inquiries and complaints.

12.    Instead of fulfilling their obligations under the contracts formed with Plaintiffs, Defendants rejected Plaintiffs from the trial modification period, thereby nullifying and voiding their trial modification agreements, and demanded payments, late and default fees.

13.    Even if Defendants did not breach an express term of the trial modification period agreement, it breached an implied term that required it to extend offers for permanent modifications within a reasonable time period following Plaintiffs' performance under the trial modification agreements. At the very least Defendants should not penalize them for their compliance with the modified payments with exorbitant payments and charging them late and delinquency fees, and reporting them to credit bureaus as in default -- all of which placed Plaintiffs in a materially worse position than before entering the contract with Defendants. Plaintiffs remain ready, willing and able to perform under the contracts by continuing to make their modified payments.

14.    As a direct and proximate result of Defendants' breach of these material terms that they falsely and misleading represented, Plaintiffs and the class members did not receive the benefit of their bargain and were damaged and are threatened with additional harm, in an amount to be determined at trial.

15.     As a direct and proximate result of Defendants' aforementioned violations, Plaintiffs and the class members have been harmed in the following ways: loss of homes; loss of home equity, relocation costs; loss of opportunity to avoid foreclosure, damage to financial reputation and the financial credit, and emotional toll of defending against foreclosures.

16.     While Plaintiffs were in the Loss Mitigation Program, Defendants, during the foreclosure proceeding in state court filed them without due and proper notification to Plaintiffs (homeowners), submitting false sworn statement of the summons servers. Therefore, Plaintiffs were never notified of said foreclosure proceedings until the foreclosure of the property in clear violation of the due process of law which constitutes a taking in violation of the Constitution of the United States of America Fifth and Fourteenth Amendment Due process rights and of the Commonwealth of Puerto Rico.

17.     The named Plaintiffs bring this claim on their own behalf and on behalf of each member of the class members.

18.     Defendants' conduct as set forth herein constitutes the offering, advertising and sale of goods, services and merchandise.

19.     Defendants' conduct as set forth herein occurred in the course of trade or commerce.

20.     Defendants' conduct as set forth herein affects the public interest and is part of a generalized course of conduct affecting numerous consumers. Plaintiffs are consumers.

21.     Plaintiffs sought to obtain Defendants' goods and services primarily for personal, family or household use.

22.     Defendants' made false, deceptive and misleading statements and omissions about material aspects of the goods and services described herein.

23.     Defendants' made these statements and omissions knowingly and willfully and with the intent that Plaintiffs and consumers would rely on them and would enter into contracts or obligations as a result.

24.     Defendants' conduct was likely to induce reliance and to create confusion and misunderstanding.

25.     Plaintiffs did rely on Defendants' statements and omissions.

26.     Defendants' conduct as set forth herein is deceptive, unfair and unconscionable.

27.     Defendants' conduct as set forth herein is not required, permitted or authorized by any federal law.

28.     Defendants' conduct as set forth herein violates established public policy, and the harms caused to consumers greatly outweighs any benefits associated with that conduct.

29.     Defendants' conduct as set forth herein proximately caused injury in fact to the business or property of Plaintiffs.

30.     As a result of Defendants' conduct, Plaintiffs suffered damages and ascertainable losses including:

     a.     wrongful foreclosures;

     b.     otherwise avoidable losses of homes to foreclosure;

     c.     less favorable loan modifications;

     d.     increased fees and other costs to avoid or attempt to avoid foreclosure;

     e.     loss of savings in fruitless attempts to secure loan modifications;

     f.     loss of opportunities to pursue other refinancing or loss mitigation strategies;

     g.     significant stress and emotional distress;

     h.     accrued interest and increased principal balances; and

i.      less favorable modification terms.

31.    Defendants' conduct intimidated Plaintiffs telling them that the "loss mitigation" is available only if they resign this Class Action Complaint.

32.    Plaintiffs reserve the right to amend or modify the class action complaint to include additional class allegations causes of action as they have been ascertained.

33.    Plaintiffs are entitled to actual, statutory and exemplary damages, restitution, an accounting, attorneys' fees and costs, equitable relief and all other relief as provided by law.

**B.  Allegation on ROBO Signing**

1.    Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

2.    In violation of Plaintiffs' rights, Defendants failed with the Law because a lender cannot initiate a foreclosure proceeding under Puerto Rico Law immediately, they have to wait for the 120-day delinquency term to expire and by Federal and Local Law the lender or servicer have to give the debtor the chance to go through the Loss Mitigation process, before foreclosing their home.

3.    In violation of Plaintiffs' rights, Defendants failed to give them the chance to cure the arrears and/or the opportunity to submit themselves to Loss mitigation, offered her a Loan Modification, Short Sale, Reinstatement or Repaying plan.

4.    Defendants began foreclosure proceedings against the Plaintiffs even when the Plaintiffs were not in arrears. In those cases, the Plaintiffs were prevented from continuing to pay their mortgages and even, threatened, harassed and/or evicted the Plaintiffs form their homes. These actions are against the law.

5.    All this harassment still continues and is taking a toll in the Plaintiffs physical and mental health. During all this time the Defendants, their servicers and their personal have been harassing

and sometimes, verbally abusing the Plaintiffs, tried to force them to sign agreements in order to evade their responsibility and negate their wrong doing.

6.      In violation of Plaintiffs' rights, Defendants failed with the Law because in judicial foreclosure states, like in Puerto Rico, the foreclosure process requires the lending institution to authorize (via submission of verified documents and written statements signed under affidavit by a bank official) the fact that the homeowner has defaulted on a mortgage the lender owns. The purpose of this process is to restrict the possession of houses by the bank in case a bank is not able to prove the ownership of a particular mortgage or if the homeowner has not defaulted to the level laid out in the foreclosure papers.

7.      Defendants regularly used false affidavits that had been signed by bank officials without the required review and verification of documents. The term 'robosigner' emerged as a result of the fact that banks were speedily approving numerous foreclosure documents without true knowledge. As a result, many homes were forced into improper foreclosure.

8.      Plaintiffs request this Honorable Court to take judicial knowledge that it is a fact that in 2012, Wells Fargo (along with other financial institutions) reached a settlement for $25 billion for charges of faulty documents and other negligent foreclosure practices.

9.      In the instant case, Defendants initiated a foreclosure against the Plaintiff without the required review and verification of documents.

10.     Defendants regularly used false documents digitally signed, and digitally notarized. So the computer appeared personally before the other computer.

11.     Defendants regularly used false documents signed as an officer of Defendants. All of the signatures are different. Defendants regularly used false documents to speed up a Marshal's sale, Defendants robo-signer still works and forecloses on people for a living.

12.     Plaintiffs reserve the right to amend or modify the class action complaint to include additional causes of action as they have been ascertained.

### C.      Allegation on Predatory Lending

1.      Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

2.      Plaintiffs allege that during the origination of the loans Defendants requested false documents to sustain income that was inexistent, such as false financial statements, false partial jobs certifications, false letters of family donations, among others, in order to be qualified to obtain a mortgage loan.

3.      The economic and financial crisis stemmed from the subprime mortgage crisis, which was mostly caused by movement of creditors and mortgage originators away from traditional underwriting practices during the real estate boom, giving rise to risky mortgages and practices, such as allowing loans with "negative amortization" features, and to the proliferation of subprime mortgages.

4.      In an effort to prevent a recurrence of such misleading practices, Congress passed comprehensive mortgage reform legislation beginning in 2007 including the Secure and Fair Enforcement for Mortgage Licensing Act of 2008 (12 U.S.C. 5101 *et seq.*, "SAFE Act"). The Mortgage Act continues these legislative efforts by amending provisions of the Truth in Lending Act (15 U.S.C. 1601 *et seq.*, "TILA") in order to reform consumer mortgage practices and provide accountability for such practices.

5.      Plaintiffs reserve the right to amend or modify the class action complaint to include additional causes of action as they have been ascertained.

### D.     Allegation on Qualified written requests (QWR's)

1.      Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

2.      Defendants failed to provide Plaintiffs with information about the nature and costs of mortgage debt.

3.      Defendants failed to comply with their duty to respond to Plaintiff's qualified written requests (QWR's) which Plaintiffs filed.

4.      Plaintiffs reserve the right to amend or modify the class action complaint to include additional causes of action as they have been ascertained.

### E.      Allegation on Violation of the Equal Credit Opportunity Act

1.      Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

2.      The "Making Home Affordable Program Request for Modification and Affidavit" completed by the Plaintiffs and each putative class member was a completed application for credit. In each instance, the Plaintiffs were asking Defendants to obtain more favorable credit terms.

3.      At all times relevant hereto, it was Defendants' practice or policy not to send timely notice letters to consumers when it denied their applications as alleged.

4.      Defendants also failed to provide the statutory disclosures required by the ECOA to Plaintiffs and the class members as required under the ECOA.

5.      The above-alleged actions and omissions of Defendants violated the ECOA, 15 U.S.C. § 1691 et seq. and Regulation B, 12 C.F.R. § 202.9. The Plaintiffs and the putative class are entitled to attorney's fees and costs pursuant to 15 U.S.C. § 1691e(d).

6.      Further, the above-alleged actions and omissions of Defendants entitle the Plaintiffs and the putative class to actual and punitive damages pursuant to 15 U.S.C. § 1691e (a) and (b).

7.      The Plaintiffs and the putative class are entitled to declaratory and injunctive relief requiring Defendants' compliance with the ECOA pursuant to 15 U.S.C. § 1691e.

8.     Plaintiffs reserve the right to amend or modify the class action complaint to include additional causes of action as they have been ascertained.

## VI.     REMEDIES UNDER APPLICABLE LAWS AND REGULATIONS

A.     "Real State Settlement Procedures Act" (hereinafter "RESPA") and Regulation X of the "Consumer Financial Protection Bureau"

1.     The United States Congress approved the "Dodd-Frank Wall Street Reform and Consumer Protection Act," PL 111-203, 12 U.S.C. § 5301, et seq., In order, inter alia, to promote the financial stability of the United States by fostering accountability and transparency of the financial system. To this end, the Consumer Financial Protection Bureau (hereinafter "CFPB") was created, a federal agency that was delegated the authority to regulate everything related to consumer protection in the financial sector.

2.     As part of the general authority delegated to the CPFB, that agency would be in charge of regulating, supervising and enforcing the provisions of the "Real Estate Settlement Procedures Act", known as RESPA. RESPA imposes on mortgage creditors and mortgage servants the duty to provide debtors with information about the nature and costs of mortgage debt and also imposes the duty to respond to qualified written requests (QWR's) which the debtors may file.

3.     The CFPB proposed a number of amendments to Regulation X, including that for the first time some rules relating to the process of "loss mitigation" or mitigation of losses of mortgage debtors. On the proposal Section 1024.41, the CFPB explained the following. We emphasize what is pertinent to this case:

"[T]here has been widespread concern among mortgage market participants, consumer advocates, and policymakers regarding servicers' performance of the mitigation activity in connection with the mortgage market crisis. In response, servicers, investors, guarantors, and State and Federal regulators have undertaken efforts to adjust servicer loss mitigation and foreclosure practices to address problems relating to the evaluation of mitigation options.

[...]
The Bureau has considered a number of different options for addressing consumer harms relating to loss mitigation. [...]

At the outset, it is worth noting that the Bureau's goal is not to achieve any particular target with respect to the number or speed of foreclosures. The Bureau's goal is rather to ensure that borrowers are protected from harm in connection with the process of evaluating the borrower for a mitigation option and proceeding to foreclosure. For instance, a borrower should not be misled about the options available to the borrower or the steps necessary to seek evaluation for those options. Further, servicers should review complete mitigation applications and make appropriate decisions with respect to those submissions.

[...]

By establishing appropriate mitigation procedures, the Bureau can ensure that borrowers receive information about the mitigation options available to them and the process for applying those options. Further, borrowers should be protected by ensuring that borrowers receive an evaluation for which they may be eligible, have an opportunity to appeal decisions by the servicer regarding loan modification options, and are protected from foreclosure until the process of evaluating the borrower's complete Loss mitigation application has ended.

[...]

Accordingly, proposed § 1024.41 requires servicers that make mitigation options available to borrowers in the ordinary course of business to undertake certain duties in connection with the evaluation of borrower applications for loss mitigation options. Proposed § 1024.41 is designed to achieve three main goals: First, proposed § 1024.41 provides protections to borrowers to ensure that, to the extent a servicer offers loss mitigation options, borrowers will receive timely information about how to apply and that the complete application will be Evaluated in a timely manner. Second, proposed § 1024.41 prohibits a servicer from proceeding with the end of the foreclosure process - that is, the scheduled foreclosure sale- until a borrower and a servicer have terminated orders regarding loss mitigation options. Third, proposed § 1024.41 sets timelines that are designed to be completed without requiring a foreclosure suspension date to avoid strategic use of these procedures to extend foreclosure timelines and delay investor recovery through foreclosure. 77 Fed. Reg. 57200, p. 57265-57267. (Emphasis supplied).

4.      The final regulations on "Loss mitigation", contained in 12 C.F.R. § 1024.41, entered into force on January 10, 2014 and regulates in detail the presentation and evaluation of loss mitigation requests. In order for a mortgagee or mortgagees to be able to evaluate a loss mitigation request, it must be complete ("complete loss mitigation application"). And, as the statute indicates, if the debtor has not submitted a complete application within thirty-seven (37) days prior to the date of

the sale at public auction, the mortgagee would have no obligation to consider it under this regulation.

5.      This new regulation also provides that when a debtor files an incomplete loss mitigation request, the mortgagee must notify the debtor, within a period of five days, whether the application is complete or incomplete. 12 C.F.R. § 1024.41 (b) (2) (i) (B). In those cases in which the lack of documents necessary to evaluate the application is notified, the new rules provide that, if the debtor submits all documents requested, the application must be considered "facially complete". In such a situation, if the creditor then discovers the need for additional information or corrections to documents previously submitted to complete the application, the creditor must: (1) require the debtor to provide missing information or documents with relevant corrections; (2) treat the application as if it were completed until the borrower has been given a reasonable opportunity to complete the application. 12 C.F.R. §. 1024.41 (c) (2) (iv). In addition, this recent regulation provides that if the creditor or mortgage agent denies the loss mitigation request, he must notify him in writing with the specific reasons for the denial. 12 C.F.R. § 1024.41 (d).

6.      However, it is necessary to note that "[n]othing in § 1024.41 imposes a duty on a servicer to provide any borrower with any specific mitigation option". 12 C.F.R. § 1024.41 (a). (Emphasis supplied). Section 1024.41 on Mitigation of Losses of Regulation X only provides the debtor with an action for damages against the creditor or mortgage agent who has violated it. 12 U.S.C. § 2605 (f).

7.      After a thorough analysis of the set of provisions governing the "Loss Mitigation" procedure, it is necessary to conclude that if the Plaintiffs were to comply with all the requirements outlined in Regulation X and RESPA, the Defendants would be placed, not only in the legal obligation to consider the Plaintiffs' request for loss mitigation, but also, if the Defendants refused

to comply with the protocol, appearing would be in their full right to initiate the corresponding claim action for damages.

8.      Therefore, we respectfully understand that the pattern of evasion by the Defendants to provide the Plaintiffs with the protection that the state and federal law protect, have no place in our system of law, since they pursue the sole purpose of evading their responsibility as creditors to the detriment of the right of the appearing Plaintiffs to protect their property under the current legal order.

9.      We humbly consider that the evasion by the Defendants of its liability is detrimental to the economic situation of the Plaintiffs, since the uncertainty it is experiencing prevents it from establishing a short-term and long-term financial plan. In turn, offer the Defendants' institution the opportunity to collect the debt in question. That is why we request from this Honorable Court to grant the conclusion of an Evidentiary View in order to evaluate in detail the qualification of those appearing for the benefits of the aforementioned federal regulations.

10.     Therefore, we understand that this Honorable Court, responding to the call of justice in a relatively new scenario, must conclude that the acts carried out by the Defendants with respect to the controversy of epigraph have consisted in a systematic neglect for the sake of to circumvent a mechanism created by legislative will with the intention of safeguarding the right of the Plaintiffs to preserve their property.

11.     Plaintiffs reserve the right to amend or modify the class action complaint to include additional remedies as they have been ascertained.

        B.  The Home Affordable Modification Program ("HAMP")

        1.      The Home Affordable Modification Program (HAMP) is designed to help financially struggling homeowners avoid foreclosure by modifying loans to a level that is

affordable for borrowers now and sustainable over the long term. The program provides clear and consistent loan modification guidelines that the entire mortgage industry can use. The Home Affordable Modification Program includes incentives for borrowers, servicers and investors and has two primary components.

2.      HAMP requires any servicer of a loan guaranteed or owned by a government-sponsored entity or insured or guaranteed by a government agency to comply with HAMP's Supplemental Directives and Guidelines (HAMP's Guidelines). Among other things HAMP's Guidelines require institutions to review defaulting loans for modification eligibility prior to proceeding with foreclosure actions.

3.      Plaintiffs reserve the right to amend or modify the class action complaint to include additional remedies as they have been ascertained.

C. The Home Affordable Refinance Program ("HARP")

1.      The Home Affordable Refinance Program ("HARP") was created by the Federal Housing Finance Agency specifically to help homeowners who are current on their mortgage payments, but have little to no equity in their homes, refinance their mortgage - that is, they owe as much or more than their homes are currently worth - are eligible for a HARP refinance. 2.2.

Plaintiffs reserve the right to amend or modify the class action complaint to include additional remedies as they have been ascertained.

D. Puerto Rico Law No. 184 of August 17, 2012

1.      The "Principal Residence Protection and Mandatory Mediation in Foreclosure Proceedings Act", Puerto Rico Law No. 184 of August 17, 2012 ("P.R. Law No. 184") creates a mandatory mediation process between mortgagors and mortgagees into foreclosure processes of residential properties in Puerto Rico.

2.      In the Statement of Motives of P.R. Law No. 184, it is stated the following:

"The People of Puerto Rico have been greatly affected by the economic crisis that both the Island and the United States have been undergoing during the last years.
The scarcity of economic resources in Puerto Rico has caused many homeowners to lose their homes to foreclosure initiated by the banking or financial institutions holding their property's mortgages.

In the United States, it is estimated that over nine million Americans will lose their homes to foreclosure within the next four years.

Goldman Sachs Group, one of the world's largest investment firms, estimates that, by 2014, foreclosure cases could exceed thirteen million nationwide, if the United States fails to take measures to solve the economic problems that foreclosure proceedings entail.

Puerto Rico's economic crisis has greatly affected our citizenry, who have been deprived of their right to own a home.

Most mortgage loans include acceleration clauses and other processes that protect any unpaid balance owed to the mortgagee.

The citizenry in general is not well aware of the technicalities and complex processes entailed by the legal obligations incurred under a mortgage loan; therefore, it requires further orientation with regard to such processes.

In light of the foregoing, the Administration of President Barack Obama created the Making Home Affordable Program (MHAP) to help mortgagors to refinance or modify their loans through two (2) programs:

(A)   Home Affordable Refinance Program (HARP): Provides refinancing at lower interest rates to homeowners whose loans are guaranteed by Fannie Mae or Freddie Mac, including those who owe more than what their home is actually worth.

(B)   Home Affordable Modification Program (HAMP): Provides mortgagors with incentives to modify their loans by reducing their loan's interest rate, extending their loan's term, or lowering their mortgage payments up to 35% of their gross income.

The United States Congress enacted legislation in order to require mortgagors of loans with Federal guarantees to submit to a mandatory mediation process, before the mortgagee initiates a foreclosure proceeding.

Just as the Federal Government, the Commonwealth Government shall contribute and seek alternatives to reduce the number of foreclosure proceedings and prevent, to the

extent possible, our citizens from losing their properties. The truth is that alternatives are available, but the people are not aware of them.

Nine states of the United States of America have approved this mandatory mediation process to be held before the courts of justice or other mandatory non-judicial processes in order to seek alternatives and prevent banks or financial institutions from initiating foreclosure proceedings.

For all of the above reasons the Legislative Assembly of Puerto Rico shall enact a law to establish a foreclosure mandatory mediation process to be held in the courts of justice or the appropriate administrative forums before a foreclosure proceeding against a principal residential property in Puerto Rico is initiated by any banking institution. Principal Residential Property shall be understood as the property used as principal home, not as a second home; and, for property tax purposes, it shall be understood as the main residence or that which would qualify for a tax exemption".

3.      Plaintiffs reserve the right to amend or modify the class action complaint to include additional remedies as they have been ascertained.

E.  Puerto Rico Law No. 169 of August 9, 2016

1.      Puerto Rico Law No. 169 of August 9, 2016, creates the "Mortgage Debtor Assistance Act" in order to require the creditor of an overdue mortgage loan, that prior to initiating any legal proceeding that may lead to a claim for money collection and foreclosure, offer the debtor the loss mitigation alternative and only after that process has been fully completed and the mortgage debtor knows whether or not he qualifies for such alternative, then the mortgagee may begin a legal process in the courts of the Commonwealth of Puerto Rico; among other purposes.

2.      Plaintiffs reserve the right to amend or modify the class action complaint to include additional remedies as they have been ascertained.

F. Negligence

1.     The Defendants and/or their authorized representatives have acted negligently in the management of the Defendants mortgages.

2.     At all times relevant herein, the Defendants, acting as Plaintiffs' lenders and loan servicers, had a duty to exercise reasonable care and skill to maintain proper and accurate loan records and to discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited, accurate crediting of payments made by Plaintiffs and act diligently and fairly in compliance with applicable rules and regulations.

3.     In taking the actions alleged above, and in failing to take the actions as alleged above, Defendants breached their duty of care and skill to Plaintiffs in the servicing of Plaintiffs' loans by, among other things, failing to properly and accurately credit payments made by Plaintiffs toward the loans, filing claims and foreclosing proceedings without having the legal authority and/or proper documentation to do so.

4.     As a direct and proximate result of the negligence and carelessness of the managing of Plaintiffs' accounts, claims and/or foreclosure proceedings by the Defendants, Plaintiffs suffered general and special damages in an amount to be determined at trial.

5.     Plaintiffs reserve the right to amend or modify the class action complaint to include additional remedies as they have been ascertained.

G. Fault of Diligence

1.     The Defendants were not diligent in properly investigating the state of affairs of the management of Plaintiffs' accounts in the present case.

2.     Plaintiffs reserve the right to amend or modify the class action complaint to include additional remedies as they have been ascertained.

H. Count under Puerto Rico State Law

1.      The Defendants failed to comply with Puerto Rico Laws 184 of 2012 and Law No. 169 of 2016.

2.      Also, Defendants come obliged under Puerto Rico Civil Code Sections 1802 and 1803 to pay for its gross negligence and recklessness in the mortgage handling and actions against the Plaintiffs in this case.

3.      Their actions have cause material, physical and mental damages to Plaintiffs.

4.      Plaintiffs reserve the right to amend or modify the class action complaint to include additional remedies as they have been ascertained.

I.      Count under Constitution of the Commonwealth of Puerto

        Rico Article 6 - General Provisions Section 14

        Section 14. Land tenure by corporations.

1.      No corporation will be authorized to conduct real estate purchase and sale business; nor shall he be allowed to possess or have such a class of assets except for those that were rationally necessary in order to carry out the purposes to which his creation obeyed; and the ownership and management of lands of any corporation authorized to engage in agriculture shall be limited, by its charter, to an amount not exceeding five hundred acres; and this provision shall be understood as preventing any member of an agricultural corporation having an interest of any kind in another corporation of the same nature.

2.      However, corporations may make loans with real estate guarantees and acquire them when necessary for the collection of loans; but they must have said real estate thus obtained within five years of having received the property title of the same.

3.      Corporations that have not organized in Puerto Rico, but do business in Puerto Rico, will be obligated to comply with the provisions, to the extent applicable.

4.      Defendants transfer the Plaintiffs' real estate property tittles from one corporation to another corporation as a subterfuge in an attempt to avoid violation of the constitutional provision previously mentioned. Therefore, holding said Plaintiffs'real estate property tittles for more than five years of having received the property title of the same.

5.      Plaintiffs reserve the right to amend or modify the class action complaint to include additional remedies as they have been ascertained.

## VII.    PRAYER FOR RELIEF

1.      The Plaintiffs state that the damages suffered were product of a faulty and / or negligent handling of Plaintiffs' mortgages by the Defendants, their representatives and authorized officials.

2.      Defendants' actions have cause great suffering and emotional distress to Plaintiffs.

3.      The Plaintiffs had not been able to live peacefully and quietly since the start of the lawsuits and/or foreclosure proceedings.

4.      The Plaintiffs had mental anguishes and sufferings as a result of the lawsuits and/or foreclosure proceedings brought against them.

5.      Defendants directly or indirectly through them, their loan servicers, employees and representatives, have been continually harassing the Plaintiffs by requiring them pay inexistent or inaccurate arrears, to communicate with them and threatened to foreclose their property.

6.      All these negligent acts have destroyed the spirit and strength of the Plaintiffs. They have caused moral damages; anguish and mental suffering that must be compensated by this Honorable Court.

7.     For all the above-mentioned facts, we understand that under Sections 1802 and 1803 of Puerto Rico Civil Code in force the claimant debt to pay for its gross negligence and recklessness in the mortgage handling and actions of the Defendants in this case.

8.     Defendants are subject to the civil penalties of TILA. U.S.C. § 1640(a). Civil damages are appropriate when disclosure requirements have been violated, and liability is imposed despite the creditor's alleged good faith and reasonableness. Ratner v. Chemical Bank N.Y. Trust Co., 329 F. Supp. 270 (S.D.N.Y. 1971).

9.     Defendants' violations of the general requirements and rescission requirements give rise to statutory damage claims. U.S.C. § 1640(a). For open-end credit transactions, statutory damages are awarded in the amount twice of the amount of finance charge. If the action arises out of a credit transaction secured by a dwelling, the consumer is entitled to a minimum award of $200 but not more than $2,000. U.S.C. § 1640(a)(2)(A)(i-iii). Only one statutory recovery is allowed even there are multiple disclosure violations in a transaction. U.S.C. § 1640(g).

10.     Plaintiffs are entitled attorney's fees in a successful action or when they are "determined to have a right of rescission under section 1635," even if the consumer is not obligated to pay his or her attorney. U.S.C. § 1640(3); Andrews v. Chevy Chase Bank, 240 F.R.D. at 621 ("because […] plaintiffs have a right of rescission, they are entitled to attorneys' fees"); Kessler v. Associates Financial Servs. Co. of HI, Inc., 639 F.2d 498, 499 (C.A. Hi. 1981) (attorney's fees are awarded even the plaintiffs are represented without charge by legal services attorneys). Attorney's fees include the cost of the action and "a reasonable attorney's fee as determined by the court." U.S.C. § 1640(3).

11.     Plaintiff are entitled for actual damages when a creditor fails to comply with the requirements imposed by TILA, in the amount equal to the sum of any actual damage sustained

by the consumer as a result of the creditor's violation. U.S.C. § 1640(a)(1). Courts may require the consumer to show actual reliance upon the accuracy of the disclosures in order to claim actual damages. Perrone v. General Motors Acceptance Corp., 232 F.3d 433, 435-439 (5th Cir. 2000); Peters v. Jim Lupient Oldsmobile Co., 220 F.3d 915, 917 (8th Cir. 2000) (detrimental reliance is established when the plaintiff shows that she read and understood the disclosures and that if the disclosures have been accurate, she would have sought and obtained a lower loan).

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated pray for judgment against Defendants as follows:

A. An order certifying this case as a class action and appointing Plaintiffs and their counsels to represent the Class Members;

B. Restitution to Plaintiffs and Class Members;

C. Actual damages for injuries suffered by Plaintiffs and Class Members;

D. An order declaring the alleged acts and practices of Defendants to constitute a breach of contract and a breach of the covenant of good faith and fair dealing;

E. An order for Defendants' specific performance of its contractual obligations together with other relief required by contract and law;

F. An order for Defendants provides relief including a reduction in the principal amount of the loans to fair market value of the properties.

G. Reasonable attorneys' fees and the costs of this action;

H. Statutory pre-judgment interest;

I.   Award Plaintiffs damages against all Defendants, jointly and severally, in an amount no less than $3,500,000,000.00 to be proven at trial together with prejudgment interests, costs and attorney fees and;

J.   Such other relief as this Court may deem just and proper.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial of their claims by jury to the extent authorized by law.

**RESPECTFULLY SUMBITTED** this 18th day of January, 2018.

*S/VANESSA SAXTON-ARROYO*
USDC PR No.: 216509
P.O. Box 191590, San Juan, PR 00919-1590
787-667-8094, vanessa.saxton@capr.org

*S/JOSEPH GIERBOLINI*
USDC PR No.: 229014
PO Box 191620 San Juan, PR 00919-1620
787- 225-5367 juriszone@capr.org

*S/JOHN A. STEWART-SOTOMAYOR*
USDC PR No.: 231804
PO BOX 140357, Arecibo PR 00614-0357
787-955-0516 stewart_j_esq@msn.com